Harold Ableman, et al., Plaintiffs-Appellees, v. Daniel A. Slader, Defendant-Appellant, and Chicago Title and Trust Company, etc., et al., Defendants.

Gen. No. 51,627.

First District, Second Division.

February 7, 1967.

Hoffman & Davis, of Chicago, for appellant.

Stone, Bolotin & Pogrund, of Chicago (Bertram A. Stone, of counsel), for appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

This appeal is taken from a temporary injunction order restraining the Chicago Title and Trust Company from releasing funds or documents on deposit with it as escrowee.

On February 28, 1966, plaintiffs entered a written contract with defendant Daniel A. Slader, whereby the latter agreed to purchase from plaintiffs certain improved real estate in Chicago. The printed form real estate contract contained a portion inserted by the parties which provided that Slader was to take title subject to "(V)iolations, if any, of the Building, Fire and Housing Codes of the City of Chicago." On March 7th the parties entered into an escrow agreement with the Chicago Title and Trust Company whereby the Title Company was directed to receive deposits of documents and funds from the parties and to distribute these to the entitled parties at the consummation of the transaction. The escrow agreement further directed that, in the event it was unable to issue its owner's title guarantee policy within 30 days from the date of recording of the deed, the Title Company would continue to comply with the escrow instructions unless a demand was made upon it by any party to the agreement for a return of the respective deposits.

On March 30th the City of Chicago filed a lawsuit against plaintiffs to abate a nuisance arising out of building, fire and housing code violations on the building in question. No lis pendens notice was filed with the Cook County Recorder of Deeds. The Title Company set up the lawsuit as an objection on its preliminary report of title, dated April 25th, and thereafter refused to waive the objection. The Title Company also recorded the deed to the property from plaintiffs to Slader on the same day. Although requested to do so by plaintiffs, Slader refused to order the Title Company to issue its policy on the ground that plaintiffs were not in a position to give him such title to the premises as was contemplated by the real estate contract because of the existence of the City's lawsuit. On June 13th Slader requested the Title Company to return his deposits and also tendered a deed of reconveyance for recording.

Plaintiffs filed their verified complaint on June 27, 1966, alleging most of the foregoing facts and further alleging that plaintiffs offered in writing to indemnify defendant for costs, attorney's fees and expenses arising out of the City's lawsuit; that defendant's refusal to authorize the Title Company to complete the sale was unjustified in view of his agreement in the real estate contract to accept title subject to the building, fire and housing code violations; that the mortgagee was threatening to withdraw his mortgage and note from the escrow and to proceed with a foreclosure action against the premises which he had theretofore agreed to discontinue due to the proposed sale; and that the Chicago Title and Trust Company was threatening to return all deposits to their respective depositors.

The complaint requested, inter alia, that the court declare the City's lawsuit not to constitute an objection to title under the terms of the real estate contract, and that the Chicago Title and Trust Company be restrained from delivering any of the deposits in the escrow to any person or persons. Attached as exhibits to the complaint were the real estate contract and the escrow agreement. No affidavit of facts was filed in support of the complaint.

On July 11, 1966, the Chicago Title and Trust Company filed its verified answer admitting that the City's lawsuit appeared as an objection on its preliminary report of title and that a demand was made by Slader upon it for a return of his deposits.

Slader also filed his verified answer on July 11th, wherein he maintained that "plaintiffs may not require this defendant to accept title to the premises described in the complaint, in performance of the agreement of sale, where the evidence of title (through the preliminary report on title of Chicago Title and Trust Company) shows title subject to the said suit brought by the City of Chicago. . . ." Slader further alleged that plaintiffs

97

failed to comply with the provisions of the real estate contract and the escrow agreement, and that they have no cause for injunctive relief against him. Attached as exhibits to the complaint were copies of his demand upon the Chicago Title and Trust Company for a return of his deposits and of the relief requested in the City's lawsuit for the code violations. No affidavit of facts was filed in support of the answer.

After noting that "no proofs are offered" and that "defendant Daniel A. Slader opposes the allowance of such injunction," the Chancellor allowed plaintiffs' motion for a temporary injunction and ordered that the Chicago Title and Trust Company be restrained from releasing any deposits from the escrow account, subject to plaintiffs filing bond. It is from this order that defendant Slader appeals.

In deciding whether the Chancellor properly issued the temporary injunction it must first be determined whether, on the posture of this record, it was correctly found that an agreement to take title subject to "(V)iolations, if any, of the Building, Fire and Housing Codes of the City of Chicago" constitutes an agreement to take title subject to a pending legal action for abatement of a nuisance arising out of those violations.

■ It appears that the existence of a building code violation does not of itself constitute a cloud on title where the real estate sale contract calls only for the passing of "good title," (such as the contract here calls for,) as opposed to a contract calling for title "free of violations," which renders the title nonmarketable. See Woodenbury v. Spier, 122 App Div 396, 106 NYS 817; Harlank Realty Corp. v. Rosenstock, 154 NYS2d 95. The incorporation of the provision in the contract, that Slader would take title subject to "(V)iolations, if any, of the

Building, Fire and Housing Codes of the City of Chicago," therefore subjects him to no more than he would have otherwise been subject.

 A marketable title is one free from a reasonable probability of litigation. Farmers & Merchants Bank of Vandalia v. Holland, 309 Ill App 193, 32 NE2d 987; ILP, Vendor and Purchaser, § 93. The pendency of litigation renders a title nonmarketable, Hayne v. Fenton, 321 Ill 442, 151 NE 877; a party cannot be required to purchase a lawsuit. Winters v. Polin, 309 Ill App 458, 33 NE2d 497. The pendency of the City's lawsuit for the code violations subjects Slader to accepting a nonmarketable title.

 A temporary injunction should not be granted on the pleadings alone where the answer controverts material allegations of the complaint. McFetridge v. First Commercial Bank, 28 Ill App2d 512, 171 NE2d 791; see also Centennial Laundry Co. v. West Side Organization, 55 Ill App2d 406, 204 NE2d 589, affd 34 Ill2d 257, 215 NE2d 443. Evidence must be taken to resolve the issues so created. Lipkin v. Burnstine, 18 Ill App 2d 509, 152 NE2d 745.

 In the instant case defendant's verified answer controverted the allegation in the complaint that defendant had agreed to take title subject to the City's lawsuit. The pleadings and exhibits on file and considered by the Chancellor in arriving at his decision do not resolve this issue. It was incumbent upon the Chancellor to hear proofs as to what was contemplated by the parties when the code violations provision was incorporated into the contract. This is especially true in light of the fact that one of the printed portions of the real estate contract provides that title was to be taken subject to "zoning and building laws and ordinances." On the record the Chancellor could not have found defendant to

have agreed to take title subject to the City's lawsuit; consequently it was error to have issued the temporary injunction.

The order is reversed and the injunction is dissolved.

Order reversed and injunction dissolved.

LYONS, P. J. and BRYANT, J., concur.