126 Ill. App.2d 293 (1970)
262 N.E.2d 74
Harry L. Cox and Charlotte S. Cox, His Wife, Plaintiffs-Appellants,
v.
Supreme Savings and Loan Association, a Corporation, Defendant-Appellee.
Gen. No. 53,563.
Illinois Appellate Court  First District.
June 12, 1970.
*294 Clarence J. Walsh, of Chicago, for appellants.
Kent, Litow and Wagner, and Jerome F. Dixon, of Chicago, for appellee.
MR. JUSTICE SMITH delivered the opinion of this court.
The plaintiffs are the contract buyers and defendant is the contract seller of premises in Chicago occupied by a three-story building housing fourteen apartments. This suit was precipitated by a suit filed by the City of Chicago on January 25, 1967, against the seller, the purchasers and certain tenants of the property charging Building Code violations and seeking either that the building be brought into conformity or that demolition of the property take place. The issue is who pays for it? A preliminary contract was entered into in March 1962, and *295 expanded into articles of agreement (Cole Form 74) dated July 1, 1962. Nothing remained to be done under the contract except for the buyer to complete his payments and for the seller to deliver its warranty deed. The buyer went into possession on the date of the contract, collected the rents, issues and profits, paid the taxes and insurance, leased the apartments and performed whatever repairs were done to the building. Under these circumstances the trial court held that the doctrine of equitable conversion applied and that even though defendant's warranty deed would be dated after July 1, 1962, it spoke as of that date and there was, therefore, no breach of contract nor an anticipatory breach of the contract nor a breach of covenant of warranty due to the city's suit on the part of the defendant. From this decree the plaintiffs appeal.
[1, 2] Previous to Shay v. Penrose, 25 Ill.2d 447, 185 NE2d 218, it had been held in this State that a contract to convey at a future time did not create an equitable title and that the buyer's estate would not ripen into an equitable title until he had performed all acts necessary to entitle him to a deed. Shay v. Penrose repudiated this concept and held that an equitable conversion takes place at the instant a valid and enforceable contract is entered into and that the buyer at that time acquires an equitable title. The doctrine of equitable conversion is actually an equitable fiction designed as an instrument to accomplish the intention of the parties and to ensure justice where technical rules of law might preclude it. It is bottomed on the equitable principle that equity regards as done that which ought to be done. At first blush, it would therefore seem that Shay is the answer to the integrity of the trial court's decree and that the seller only held a naked legal title in trust for the buyer and the buyer in turn became the equitable owner of the property and held the purchase money in trust for the seller. *296 This conclusion, the plaintiffs assert, flies squarely into the decisional law in this State and cannot properly be sustained.
[3] It may be conceded that when the final payment is made on the contract in question and the defendant's deed is delivered while the City's suit for violation is still pending, the title is nonmarketable and the trial court's decree requires the purchasers to accept a nonmarketable title. Ableman v. Slader, 80 Ill. App.2d 94, 224 NE2d 569; Hayne v. Fenton, 321 Ill. 442, 151 NE 877. When was the defendant to provide a marketable title? Under the rider attached to the contract, it is recited that the seller at the time of the contract was the holder of a master's certificate of sale under a mortgage foreclosure decree, that the period of redemption would expire on November 7, 1962, and that the seller would obtain a master's deed and a guaranty policy from Chicago Title & Trust Company showing good and sufficient title in the seller and would within 30 days after November 7, 1962, submit the same to the purchasers for their inspection. The rider also required the purchasers to ask for consent and approval of the seller for any capital or major expenditures before any contract for such expenses could be made. The contract required the purchasers to correct five code violations at their own expense which had been set forth in a letter of April 2, 1962, from the Code Department of the City of Chicago. It seems almost axiomatic that this rider to the contract is attached to alter, modify or change the normal course of events as described in the articles of agreement. Indeed the contract is expressly stated to be "subject to a rider agreement ... attached hereto." There was no obligation on the part of the seller to furnish a title guaranty policy as of 1967 or a subsequent date nor was such the intention of the parties.
Paragraph five of the articles of agreement provided that "no right, title or interest, legal or equitable, in the *297 premises aforesaid, or any part thereof, shall vest in the purchaser until the delivery of the deed aforesaid by the seller, or until the full payment of the purchase price at the time and in the manner herein provided." In City of Chicago v. Mandoline, 26 Ill. App.2d 480, 168 NE2d 784, the property involved was sold on contract and the purchaser went into possession shortly after the execution of the contract. About three weeks later an inspection team of the city visited the premises, found numerous ordinance violations and sued both buyer and seller. A not guilty verdict was returned against the buyer and a guilty verdict was returned against the seller. The judgment of the trial court was upheld by the Appellate Court on the theory that the seller was not only the owner of the property and thus liable under the ordinance for any violations by the terms of the ordinance, but that under the articles of agreement he had complete control of the property to the exclusion of the contract purchaser. In that case the court found that factually the purchaser had only the right to occupy the premises as long as he made the monthly payments. The contract there involved is not controlling here for the very cogent reason that the factual situation there recited is far different from the one before us. The purchaser there could not record his contract nor could he sublet the premises, he could make no repairs which would constitute a lien, and was required to submit to the seller every contract, together with the plans and etc., for any improvements to the premises. In the case at bar, the purchasers exercised all of the rights of an owner and performed all the duties of an owner and were prohibited only from making major or capital improvements without authority of the seller. The purchasers' rights here far exceeded the right to possession only. They, not the seller, exercised all of the prerogatives of ownership with the limitation as to capital improvements previously noted. The doctrine of Shay was recently reaffirmed by the Supreme *298 Court in Rosewood Corp. v. Fisher, ___ Ill2d ___, ___ NE2d ___. We do not deem Mandoline controlling.
Even so, the purchasers say, the decree in this case is squarely contrary to Eade v. Brownlee, 29 Ill.2d 214, 193 NE2d 786. Referring to language of paragraph five quoted above which was identical, the court stated at p 218:
"This clause clearly shows it was the intention of the parties that no equitable conversion would be made and that the purchaser would take no title in the premises until delivery of deed or full payment. Under this clause alone, the claim of equitable title in the purchaser sufficient to make mortgages is wholly defeated."
The facts in that case are again far different from those in the case at bar and it must be read in the light of those facts. There the successor of the contract-seller declared a forfeiture and filed a suit to confirm the forfeiture, remove clouds from the title and for a writ of assistance. The defendants in the case had taken some mortgages for improvements on the property and it was their theory that they had a right to pay off the contract and then foreclose their mortgages on the theory that the contract purchaser was the equitable owner and had the right to mortgage the property. Quoting the proviso that no right, title or interest should vest in the purchaser until the delivery of the deed or until the payment of the purchase price, the court held that the making of the mortgages themselves was an act in violation of the articles of agreement. It should also be noted here that these mortgagees were undertaking to exercise equitable rights after the seller had already declared a forfeiture. It is thus clear that if the purchaser had no rights at this point, neither did the mortgagee. It is likewise clear that the mortgagees were seeking to protect some rights for improvements, which were described by the court as shoddy improvements at a ridiculous cost, and prompted *299 the statement that these facts do not lend support to an equitable position sufficient to waive all of the principles the court had stated applied to the contract. Thus, the court in effect holds that the doctrine of equitable conversion will not be used to bring about an inequitable result. We have no quarrel either with that decision or with its result. Its principles are misplaced when applied to the facts before us.
[4, 5] The apartment building here was constructed under a permit issued under a 1951 ordinance. In 1956, the ordinance as amended was in force at the time of the contract between our parties. The 1956 ordinance made some building requirements that were not included in the 1951 ordinance. In April, prior to our contract, the property had been inspected by the city and there were five violations noted. In their contract the parties provided that the plaintiffs should pay for the correction of those violations. That was their understanding; that was their contract. The violations, however, for which the City of Chicago now files suit were in existence at the time of the inspection by the city and at the time the contract was entered into and were not mentioned. They were not mentioned because it was then thought that the city could not enforce the violations of the 1956 ordinance for the very simple reason that it did not apply retroactively. However in February, 1963, in Kaukas v. City of Chicago, 27 Ill.2d 197, 188 NE2d 700, the Supreme Court held that such violations were now enforceable and were retroactive. In Kaukas, the Supreme Court permitted the enforcement of a municipal ordinance adopted and enacted after a particular building had been constructed and so it is here. It was there stated that it was not a denial of due process of law nor a deprivation of property without just compensation to exercise the police power in this fashion as to existing buildings. Until this pronouncement, both the purchaser and the seller were home free from prosecution for the violations contained in the *300 city's suit. It is fundamental that they contracted in the light of the law as it was at the time of their contract. Specific enforceable ordinance violations were called to their attention and their contract provided that the purchasers should pay for the expense of correcting them. They even went further and certified that those five violations which the purchasers were to correct were the only ones that had ever officially come to the attention of the defendant and the defendant warranted that fact. Both parties nevertheless were presumed to know the provisions of the 1956 ordinance. They are charged with knowing that the building was in violation at the time of the contract and that such violations were then unenforceable.
[6, 7] Actually we need not rely in totality either on equitable conversion or upon a speculative intention of the parties. Their language contained in the rider is specific. It recites that the seller is the owner of a Master's Certificate, that the redemption period would expire on November 7, and on that date the seller "shall obtain a Master's Deed and shall obtain from the Chicago Title and Trust Company a guaranty policy showing good and sufficient title in the Seller, and shall, within thirty days after November 7, 1962, submit same to the Purchasers for their inspection." The contract further provides that in the event that a redemption is made or in the event that the seller fails to produce evidence of good and sufficient title "in the time and manner aforesaid" the purchasers shall within ten days of either event, at their election, be entitled to a repayment of all monies advanced and for all amounts paid or then owing by the purchasers for maintaining, operating and improving the premises less any rents collected by them. Seller agreed within thirty days after November 7 to furnish to the purchasers a guaranty policy showing "good and sufficient title" in the seller. Within that time limitation, there was no suit pending. There was nothing that made *301 the title nonmarketable. There was no proviso in the contract calling for a title "free of violations" which would render the title nonmarketable. The existence of a Building Code violation is not in itself a violation of a covenant to provide a "good title." See Ableman v. Slader, 80 Ill. App.2d 94, 224 NE2d 569. This was their contract. This was the time which they agreed upon, not the time when the warranty deed was to be delivered. Surely the purchasers would not assert that a new ordinance making new safety provisions for the operation of this apartment would be at the expense of the sellers. By the same token, it would appear that unenforceable violations should not be at the expense of the seller. To hold otherwise would preclude sellers from disposing of property without an agreement making such installment contracts specifically subject to any impositions of any kind imposed after the date of the contract. In the face of the rider to this contract, it is abundantly clear that paragraph five was in fact and in law nullified by the rider. It is fictional rather than factual to hold that the purchasers here under paragraph five of their agreement had nothing but a possessory right. To so hold is to fly into the face of the language and the conduct of both parties. A necessary concomitant of receiving equity is that one does equity. The decree of the trial court does just that and it is affirmed.
Affirmed.
CRAVEN, P.J. and TRAPP, J., concur.