BORIS RADOVANOV *et al.*, Plaintiffs-Appellants, v. LAND TITLE COMPANY OF AMERICA, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—87—2459

Opinion filed September 27, 1989.

Andrew J. Creighton, of Chicago, for appellants.

Rosenthal & Schanfield, of Chicago (Lawrence M. Templer and Stephen P. Kikoler, of counsel), for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs, Boris and Mirjana Radovanov (the Radovanovs), appeal from a judgment entered in favor of defendants, Land Title Company of America, Inc., and Title Insurance Company of Minnesota (the Title Insurance Companies), at the close of plaintiffs' case in a bench trial. On appeal, the Radovanovs argue that the trial court erred in ruling that the terms of the title insurance commitment and policy did not require the Title Insurance Companies to disclose or provide insurance coverage for damages caused by a pending housing code violation lawsuit involving their insured real estate. The pending housing code violation lawsuit predated the title insurance commitment and policy. We reverse and remand for a new trial.

The Radovanovs contracted to purchase an 88-unit apartment hotel in Chicago. Prior to closing the sale, Mr. Radovanov, who had been a maintenance man at other buildings, inspected the property two or three times. The inspection revealed some problems, including fire damage, which was repaired by the seller prior to closing. Also, prior to closing, the sellers informed the Radovanovs' attorney that they had received notice of building code violations which included housekeeping problems such as peeling paint or lack of smoke detectors. The parties agreed that these problems would be corrected prior

to sale. At closing, the Radovanovs were assured that the problems were resolved.

The Radovanovs assumed the sellers' mortgage, which was held by the Bank of Ravenswood (the Bank). The Bank ordered a title commitment, and on September 22, 1980, the Title Insurance Companies issued a commitment to issue a policy of title insurance for the apartment hotel. The commitment did not reveal that a housing code violation lawsuit involving the apartment hotel was pending.

In October 1980, the Title Insurance Companies revised the commitment to issue title insurance and again failed to disclose the pending lawsuit. In October, when the Radovanovs completed the purchase of the property, neither they nor their attorney knew of the pending litigation. In February 1981, the Title Insurance Companies issued a title insurance policy for the apartment hotel to the Radovanovs. The title insurance policy did not disclose the pending lawsuit.

In July 1981, the Radovanovs discovered for the first time that a lawsuit regarding building code violations at the apartment hotel had been pending since February 1980. The housing code violation lawsuit alleged numerous violations and sought by way of relief, demolition and/or the appointment of a receiver for the building. The Radovanovs also discovered that prior to their purchase, the Bank, as mortgagee and trustee of the apartment hotel, appeared in court in April 1980 to answer the building code violation charges.

In October 1981, the Radovanovs filed a rescission action against the seller alleging failure to disclose the pending housing code litigation. In December 1981, the Radovanovs' attorneys requested that the Title Insurance Companies defend the municipal housing court case and fulfill their obligations under the title insurance policy. The Title Insurance Companies denied coverage. The rescission action was later settled, but the Radovanovs' losses were not completely satisfied.

In October 1984, the Radovanovs brought this action to recover monetary damages incurred as a result of the Title Insurance Companies' failure to either disclose the existence of the pending housing code violation lawsuit or provide insurance coverage for the resultant financial loss. In a bench trial, following the close of the Radovanovs' case, the court entered judgment in favor of the Title Insurance Companies and against the Radovanovs. This appeal followed.

On appeal, the Radovanovs argue that the trial court erred in ruling that the terms of the Title Insurance Companies' commitment and policy excluded coverage for damages incurred as a result of building code violation litigation which preexisted the date of the title insurance commitment and policy. We agree.

The Radovanovs contend that the Title Insurance Companies were contractually obligated to provide insurance coverage for their failure to disclose the pending housing code violation litigation because it rendered their title to the apartment hotel unmarketable. The Title Insurance Companies respond with three defenses. They allege that (1) coverage was properly denied because under exclusion 1 of the policy, building ordinances and the effects of violations of building ordinances are not covered; (2) because the pending litigation was not the subject of a *lis pendens* notice recorded with the recorder of deeds, it was not a matter of public record, and they cannot be charged with constructive notice of the lawsuit; and (3) because the policy allows them to use the defenses that they have against the party in title, *i.e.*, the trustee Bank and beneficiary sellers, against the Radovanovs, coverage is excluded because the Bank knew of the housing code violations, but failed to inform the Title Insurance Companies. After reviewing the record and documents in this case we are persuaded that the evidence, law and equities lie with the Radovanovs.

The title insurance policy provides in pertinent part:

"SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE GENERAL EXCEPTIONS CONTAINED IN SCHEDULE B AND THE PROVISIONS OF THE CONDITIONS AND STIPULATIONS HEREOF, TITLE INSURANCE COMPANY OF MINNESOTA, ***, insures ***, against loss or damage, *** sustained or incurred by the insured by reason of:

1. Title to the estate or interest *** being vested otherwise than as stated;

2. Any defect in or lien or encumbrance on such title;

3. Lack of a right of access to and from the land; or

4. Unmarketability of such title.

\* \* \*

The following matters are expressly excluded from the coverage of this policy:

1. Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or prohibiting a separation in ownership or a reduction in the dimensions or area of the land, or the effect of any violation of any such law, ordinance or governmental regulation.

\* \* \*

3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the in-

sured claimant; (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder; (c) resulting in loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy; or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

\* \* \*

1. Definition of Terms
The following terms when used in this policy mean:

\* \* \*

(f) 'public records': those records which by law impart constructive notice of matters relating to said land."

First, we will address the issue of whether the pending housing code lawsuit rendered title to the apartment hotel unmarketable.

■ Initially, we note that the issue of whether or not title to real estate is merchantable is a question of law for the court. (*Wilfong v. W.A. Schickedanz Agency, Inc.* (1980), 85 Ill. App. 3d 333, 337, 406 N.E.2d 828, 831.) Merchantable title has been defined as not perfect, but reasonably secure against litigation or flaws decreasing market value. (*Sinks v. Karleskint* (1985), 130 Ill. App. 3d 527, 529, 474 N.E.2d 767, 769.) A pending municipal housing code violation lawsuit, undisclosed to the buyer prior to sale, renders the title received subject to this litigation unmarketable. *Ableman v. Slader* (1967), 80 Ill. App. 2d 94, 99, 224 N.E.2d 569, 571.

■ In the present case, the Title Insurance Companies contracted to provide the Radovanovs insurance coverage for damages resulting from the "unmarketability" of their title. Since a housing code violation lawsuit clearly renders a title unmarketable, in the absence of an applicable exclusion, the Title Insurance Companies are obligated to provide coverage for damages caused by the pending lawsuit which predated the issuance of the title commitment and policy.

Next, we address the Title Insurance Companies' contention that insurance coverage was properly denied because under exclusion 1 of the policy, building ordinances and the effects of violations of building ordinances are not covered.

The purpose of title insurance is to protect a purchaser of real estate against title surprises. (*Pohrer v. Title Insurance Co.* (N.D. Ill.

1987), 652 F. Supp. 348, 352.) A prospective purchaser of real estate relies on the title insurer's search when he decides whether or not to purchase the property. Thus, he expects the insurer to have (1) researched the applicable law, as well as the records, before issuing the commitment and (2) to provide warnings about areas in which he might find surprises. (*Pohrer*, 652 F. Supp. at 353.) Moreover, when a person finalizes a real estate transaction and purchases title insurance, he expects to obtain a professional title search, legal opinion on the condition of title and a guarantee. *McLaughlin v. Attorneys' Title Guaranty Fund, Inc.* (1978), 61 Ill. App. 3d 911, 916, 378 N.E.2d 355, 359.

In interpreting the provisions of an insurance policy, the intent of the parties is the most significant factor, and any ambiguity should be construed in favor of the insured. (*Weeks v. Aetna Insurance Co.* (1986), 150 Ill. App. 3d 90, 94-95, 501 N.E.2d 349, 352.) Further, it is well settled that insurance forfeitures are disfavored. Even in doubtful cases, courts should be quick to find facts which support coverage and language of the policy should be liberally construed in favor of coverage so that the insured is not deprived of the benefit of insurance for which he paid, except where the terms of the policy clearly require a different result. *Bellmer v. Charter Security Life Insurance Co.* (1986), 140 Ill. App. 3d 752, 755, 488 N.E.2d 1338, 1340.

In the present case, the Title Insurance Companies urge us to construe the phrase "the effects of violations of building ordinances" in exclusion 1 of the policy to include building code violation litigation which was pending when the title insurance commitment and policy issued. This construction would relieve the Title Insurance Companies from any responsibility for failure to disclose many types of litigation which impair the marketability of title. Such a construction is in direct conflict with the Title Insurance Companies' guarantee to insure against loss or damage sustained due to unmarketability of title. In this context, the conflict renders the phrase "the effects of violations of building ordinances" ambiguous. The purpose of title insurance would be defeated by an adoption of the statutory interpretation urged by the Title Insurance Companies. Disclosure of title surprises such as a pending lawsuit which seeks to demolish or place into receivership a parcel of real estate is just the sort of problem that a title insurance purchaser seeks to discover and/or insure against. Because ambiguities in an insurance policy are to be construed in favor of the insured, and forfeitures are disfavored, we find that exclusion 1 of the policy does not exclude from coverage damages caused by a housing code violation lawsuit which existed prior to issuance of the

title commitment and policy.

The Title Insurance Companies' contention that because the pending litigation was not the subject of a *lis pendens* notice filed with the recorder of deeds, it was not of public record, and thus, they cannot be charged with constructive notice of the lawsuit, is also unpersuasive.

■■ The Illinois statute concerning *lis pendens* does not create an obligation to file a *lis pendens* notice. The statute provides that the filing of notice will serve to bind purchasers of property to the subject litigation *pendente lite*, as if they had been a party thereto. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1901.) The title insurance policy defines public records as "those records which by law impart constructive notice of matters relating to said land." However, the Title Insurance Companies claim that their obligation is limited to reporting only litigation in which *lis pendens* notices have been filed. This construction does not comport with the plain meaning of the policy. Since the Title Insurance Companies could have specifically provided that public records meant only the records of the recorder of deeds, we decline to adopt that construction. Further, because title insurance companies customarily search court records to determine the existence of tax, probate, dissolution of marriage or other types of litigation affecting title, the lawsuit in question could and should have been discovered by a routine title search. (See *Eckland v. Jankowski* (1950), 407 Ill. 263, 267, 95 N.E.2d 342, 344; *Abelman v. Slader* (1967), 80 Ill. App. 2d 94, 96, 224 N.E.2d 569, 570.) We therefore find that the term "public records" as defined in the title insurance policy does not exclude the records of the circuit court of Cook County.

Finally, the Title Insurance Companies contend that because the policy allows them to use the defenses that they have against the title holder, *i.e.*, the trustee Bank and its beneficiary, the seller, against the Radovanovs, insurance coverage is excluded because the Bank and seller knew of the housing code violations, but failed to inform the Title Insurance Companies.

■■ This argument would allow the Title Insurance Companies to impute the sellers' knowledge of the pending lawsuit to the Radovanovs. Such an interpretation would allow the sellers' failure to disclose the pending litigation to either the Radovanovs or the Title Insurance Companies to defeat the Radovanovs' right to recovery under the terms of the policy. This interpretation would defeat the purpose of title insurance and deny the Radovanovs insurance coverage for damages caused by an unmarketable title. We find the relationship between the sellers and the Radovanovs to be adversarial in nature,

and therefore decline to impute to the Radovanovs the sellers' knowledge of pending housing code violation litigation. We therefore find that the Radovanovs' title insurance coverage is not excluded because of the sellers' failure to disclose the pending housing code violation lawsuit to the Title Insurance Companies.

Accordingly, the judgment of the circuit court is reversed and this cause remanded for a new trial.

Reversed and remanded.

FREEMAN, P.J., and WHITE, J., concur.