FIFTH DIVISION
 Filed: 3/27/97










Nos. 1-95-2651 and 1-95-2783 (Cons.)

OAK PARK TRUST & SAVINGS BANK, as ) APPEAL FROM THE
trustee under trust agreement dated ) CIRCUIT COURT OF
November 1, 1985, and known as Trust ) COOK COUNTY
No. 9585, and JOHN R. EPIFANIO, )
 )
 Plaintiffs-Appellees and )
 Cross-Appellants, )
 )
 v. ) 
 )
INTERCOUNTY TITLE COMPANY OF ILLINOIS )
and STEWART TITLE GUARANTY COMPANY, )
 ) HONORABLE
 Defendants-Appellants and ) KENNETH L. GILLIS,
 Cross-Appellees. ) JUDGE PRESIDING.


 JUSTICE HOFFMAN delivered the opinion of the court:

 The plaintiffs, Oak Park Trust & Savings Bank, as trustee
under Trust No. 9585 (Oak Park Bank) and John R. Epifanio,
initiated this action against the defendants, Intercounty Title
Company of Illinois (Intercounty) and Stewart Title Guaranty
Company (Stewart), claiming that the defendants, as title insurers,
breached their contract and made fraudulent misrepresentations by
failing to inform the plaintiffs of certain liens on a parcel of
real estate. The trial court entered summary judgment in favor of
the plaintiffs on the breach of contract claim and in favor of the
defendants on the fraud claim. The defendants appeal summary
judgment on the breach of contract claim. The plaintiffs cross-
appeal only from the trial court's denial of prejudgment interest. 
We reverse and remand. 
 Prior to November 1985, Epifanio agreed to purchase a piece of
property from his nephew. The attorney who represented Epifanio in
this transaction ordered a title commitment from Intercounty and
received this document sometime prior to the closing on November
18, 1985. Defendant Stewart issued the title commitment, effective
October 31, 1985, which contained the following pertinent language
under the proposed exceptions:
 "1. General Real Estate Taxes for the year 1985. Tax
 Number 16-07-302-005, Volume 141.
 Note: The amount of the 1984 taxes was $6,550.82.
 Note: The 1985 taxes are not yet due and payable.
 Note: The 1982 taxes were sold September 20, 1984, for
 the amount of $8,242.00, to Phoenix Bond and Indemnity
 Company (Phoenix)." 
 After Epifanio learned of the sale of the 1982 taxes, he
renegotiated the sales price of the property with his nephew in
order to account for the cost to redeem the 1982 taxes purchased by
Phoenix.
 Epifanio's attorney testified in his deposition that, shortly
after receiving the commitment and prior to the closing, he
contacted Walter Joy, an Intercounty representative, to request
that Intercounty order an estimate of redemption. According to the
attorney, Joy gave his assurances that there were no liens for 1983
and 1984 real estate taxes. Joy allegedly agreed to mail the
estimate of redemption to Epifanio's attorney and confirmed that
the parties could close as scheduled. The attorney said he
inferred from their conversation that Joy had the estimate of
redemption in front of him, but he could not verify this fact. 
Epifanio's attorney presented an estimate, dated November 14, 1985,
which he allegedly received in the mail from Intercounty after the
parties had closed and Epifanio had already redeemed the property. 
 Joy's affidavit stated that he did not recall either ordering
or being asked to order the estimate of redemption for Epifanio's
attorney. He further stated that he did not possess, nor did he
ever imply that he possessed, a completed estimate of redemption at
any time during their telephone conversations. Joy also denied
stating that there were no liens for the 1983 and 1984 real estate
taxes. 
 The closing took place on November 18, 1985. On November 19,
Epifanio went to redeem the property and pay the 1982 taxes. When
he ordered an estimate of redemption, he learned, allegedly for the
first time, that Phoenix had also paid the 1983 and 1984 taxes,
resulting in the additional sum of $16,366.69 due in order to
redeem the property. Epifanio paid this additional amount along
with the amount due for the 1982 taxes. He thereafter made demand
upon the defendants to reimburse him for the loss he incurred by
relying on the title commitment which had only noted the 1982 tax
sale. The defendants refused to pay.
 On April 20, 1988, the plaintiffs, Oak Park Bank and Epifanio,
filed this action seeking declaratory relief and alleging
fraudulent misrepresentation against the defendants. The case was
dismissed for want of prosecution on March 16, 1989, but the
dismissal order was vacated six weeks later. The record indicates
no further action occurred until the plaintiffs filed a motion for
summary judgment on September 28, 1993. Thereafter, the defendants
filed a cross-motion for summary judgment. On December 13, 1993,
the trial judge struck the plaintiffs' request for declaratory
relief and transferred this case to the Law Division of the Circuit
Court of Cook County. In January 1994, the plaintiffs filed an
amended complaint for (1) breach of contract, (2) bad faith under
the Illinois Insurance Code, and (3) fraud. After the defendants
successfully moved to dismiss the bad faith claim, the plaintiffs
filed their second amended complaint alleging breach of contract
and fraud. 
 On June 9, 1995, the trial court entered summary judgment in
favor of the plaintiffs on their breach of contract claim and
against the plaintiffs on the fraud claim. The court denied the
plaintiffs' motion for prejudgment interest. The defendants
appealed the award of summary judgment on the breach of contract
claim and the plaintiffs cross-appealed from the trial court's
denial of prejudgment interest.
 We first address the defendants' contention that the trial
court erred in granting summary judgment in favor of the
plaintiffs. Summary judgment is appropriate if there is no genuine
issue of material fact and the moving party is entitled to judgment
as a matter of law. 735 ILCS 5/2-1005(c) (West 1994). The court
must consider the affidavits, depositions, admissions, exhibits and
pleadings on file and construe the evidence strictly against the
movant and liberally in favor of the nonmoving party. In re Estate
of Hoover, 155 Ill. 2d 402, 410-11, 615 N.E.2d 736 (1993). A
triable issue of fact exists where there is a dispute as to
material facts or where the material facts are undisputed but
reasonable persons might draw different inferences from those
facts. Hoover, 155 Ill. 2d at 411. This court reviews a summary
judgment de novo. Hoover, 155 Ill. 2d at 411.
 The purpose of title insurance is to protect a transferee of
real estate from possible losses through defects that may cloud
title. McLaughlin v. Attorneys' Title Guaranty Fund, Inc., 61 Ill.
App. 3d 911, 915, 378 N.E.2d 355 (1978); Radovanov v. Land Title
Co. of America, 189 Ill. App. 3d 433, 437, 545 N.E.2d 351 (1989). 
The prospective real estate purchaser relies on the title insurer's
search when he decides whether or not to purchase the property;
accordingly, he expects the insurer (1) to have researched the
applicable law, as well as the records, before issuing the
commitment, and (2) to provide warnings about areas in which he
might find title surprises. Radovanov, 189 Ill. App. 3d at 438. 
 General principles of insurance contract interpretation
provide that such contracts should receive a practical, reasonable,
and fair construction consonant with the apparent object and intent
of the parties, viewed in light of their purpose. First National
Bank v. Stewart Title Guaranty Co., 279 Ill. App. 3d 188, 193, 664
N.E.2d 310 (1996). As with any insurance policy, courts are not to
distort the language of the title policy to create ambiguities in
order to rewrite the policy. McLaughlin, 61 Ill. App. 3d at 914.
 The title insurance commitment issued here contains the
following pertinent language:
 "The policy or policies to be issued will contain
 exceptions to the following matters unless the same are
 disposed of to the satisfaction of (Stewart).
 A. Defects, liens, *** first appearing in the public
 records or attaching subsequent to the effective date
 hereof but prior to the date the proposed insured
 acquires for value of record the estate or interest or
 mortgage thereon covered by this Commitment."
 The commitment also expressly excludes from the coverage of the
policy "(5) [t]axes, or special assessments which are not shown as
existing liens by the public records." 
 The defendants claim that they were under no obligation to
provide any further information regarding the 1983 and 1984 taxes
since to do so would go beyond its duties as defined by the
commitment. The defendants argue that they contracted with the
plaintiffs to disclose those items affecting marketability of title
of which they had actual or constructive notice based on a review
of the public records. According to the defendants, an estimate of
redemption is not an existing public record since it is created and
calculated upon a specific request. The defendants maintain that
they included in the title commitment all of the pertinent real
estate tax information available from the public records as of the
effective date of the commitment.
 Public records containing real estate tax information are
maintained by the Cook County Clerk (Clerk) and by the Cook County
Collector (Collector). Section 253 of the former Revenue Act of
1939 (Act) (Ill. Rev. Stat. 1983, ch. 120, par. 734, repealed by
P.A. 88-455, Art. 32, sec. 32-20, eff. Jan. 1, 1994), provided that
property sold under the provisions of the Act could be redeemed by
owners and persons interested in the real estate by paying the
Clerk the amount for which the property was sold together with the
amount of all taxes, special assessments, and penalties paid by the
tax purchaser for each year between the time of the payment of the
subsequent tax or special assessment and the time of redemption. 
It was the Clerk's duty to include in the certificate of deposit
for redemption the amount of the subsequent taxes, special
assessments, redemptions from subsequent forfeitures or tax sales,
and other fees paid by the tax purchaser or holder of the tax
certificate. This section further provided: 
 "The county clerk shall not be required to include any
 subsequent taxes, special assessments or, redemptions
 from subsequent forfeitures or tax sales, fees of the
 registrar of titles and fees and costs of the clerk of
 the circuit court in his certificate of deposit for
 redemption, nor shall the payment thereof be a charge
 upon the land sold for taxes, unless the purchaser,
 assignee, or holder of the tax certificate of sale shall
 have filed and have posted by the county clerk on the tax
 judgment, sale, redemption and forfeiture record, not
 less than 30 days prior to the expiration of the period
 of redemption, an official, original or duplicate receipt
 for the payment of subsequent taxes, special assessments,
 redemptions from subsequent forfeitures or tax sales,
 fees of the registrar of titles and fees and costs of the
 clerk of the circuit court and it shall be the duty of
 the tax collector, county clerk, clerk of the circuit
 court and registrar of titles to furnish duplicate
 receipts." Ill. Rev. Stat. 1983, ch. 120, par. 734. 
 Former section 196 of the Act concerned the recording of tax
payments in the Collector's warrant books and stated as follows:
 "Whenever any person pays the taxes charged on any
 property, the collector shall enter such payment in his
 book, specifying by whom paid (if other than the assessee
 and if so requested), the amount paid, what year paid
 for, and the property and value thereof on which the same
 was paid, according to its description in the collector's
 books ***; and such entry and any receipt, if given,
 shall bear the genuine or facsimile signature or printed
 name of the collector or his deputy receiving such
 payment; and evidence of payment shall consist of the
 taxpayer's cancelled check or money order and the
 receipt, where they exist, together with the entry in the
 collector's books. The collector or his deputy shall be
 required to issue a receipt to a taxpayer only if (1) the
 taxpayer makes a payment in cash, or (2) the taxpayer
 requests a receipt as evidence of his payment. *** The
 collector shall enter, opposite each tract or lot of
 land, the name and post office address of the person
 paying tax if such person is other than the assessee and
 has requested a receipt specifying by whom the tax was
 paid." Ill. Rev. Stat. 1983, ch. 120, par. 677.
 The record indicates that counsel for the defendants referred
to the relevant page from the collector's warrant books at the
summary judgment hearing to support his contention that the
Collector's records contained no information beyond the fact that
the taxes for 1983 and 1984 were marked "paid," whereas the 1982
taxes were specified as being sold to Phoenix. This document was
not included in the record on appeal. The plaintiffs maintained
that a public record naming the tax payer for 1983 and 1984 must
have existed since the Clerk would not have been able to compile
the estimate of redemption without determining who paid the taxes
for those years. They further argued that the Clerk's records must
have named the tax buyer or else Phoenix would have lost its
entitlement to reimbursement on redemption. According to the
plaintiffs, the only reasonable inference was that the Clerk had a
record of the entity that made the 1983 and 1984 tax payments. 
 We agree that if Phoenix's payment of the 1983 and 1984 taxes
is established as being part of the public record on or before
October 31, 1985, the effective date of the title commitment, then
the defendants unquestionably were obligated to disclose this
information in the title commitment. However, the record indicates
that the plaintiffs put forth nothing which tended to prove that
the tax information disclosing Phoenix as the taxpayer for 1983 and
1984 was available in the public records maintained by the Clerk or
the Collector on or before October 31, 1985. 
 The plaintiffs contend that the copy of the estimate of
redemption dated November 14, 1985, which Epifanio's attorney
allegedly received from Intercounty after the November 18 closing,
proved that Phoenix's payment of the 1983 and 1984 taxes were a
matter of public record prior to the closing and that the
defendants had actual knowledge thereof, but had failed to disclose
this fact to the plaintiffs. However, this copy of the estimate of
redemption does nothing more than indicate that the information was
available on November 14, 1985, whereas the commitment excludes
from coverage those "[d]efects, liens, *** first appearing in the
public records or attaching subsequent to the effective date hereof
(October 31, 1985) ***."
 It was the plaintiffs' burden to produce evidence tending to
prove that the information was a matter of public record on or
before October 31, 1985, and thus subject to disclosure. Since the
plaintiffs did not produce any such evidence, they failed to meet
their burden of establishing their right to judgment as a matter of
law. Reviewing the evidence in the light most favorable to the
defendants, we hold that the trial court erred in granting summary
judgment in favor of the plaintiffs. 
 Under normal circumstances, our reversal of the summary
judgment entered in favor of the plaintiffs would render it
unnecessary to decide the plaintiffs' cross-appeal from the trial
court's denial of prejudgment interest. However, we will address
the question for the purpose of instruction should this issue arise
on remand. 
 Section 2 of the Interest Act provides:
 "Creditors shall be allowed to receive at the rate of
 five (5) per centum per annum for all moneys after they
 become due on any bond, bill, promissory note, or other
 instrument of writing; ***." 815 ILCS 205/2 (West 1994).
 The title commitment here provided in pertinent part:
 "6. Determination and Payment of Loss
 (a) The liability of the Company under this policy
 shall in no case exceed the least of:
 (i) the actual loss of the insured claimant; or
 (ii) the amount of insurance stated in Schedule
 A. 
 (b) The Company will pay, in addition to any loss
 insured against by this policy, all costs imposed upon an
 insured in litigation carried on by the Company for such
 insured, and all costs, attorneys' fees and expenses in
 litigation carried on by such insured with the written
 authorization of the Company.
 (c) When liability has been definitely fixed in
 accordance with the conditions of this policy, the loss
 or damage shall be payable within 30 days thereafter." 
 The trial judge denied prejudgment interest to the plaintiffs based
on his conclusion that "a liquidated debt is a debt that is capable
of being calculated from the instrument" and "[t]here is nothing in
the policy that states what the taxes are for 1983 and 1984 or what
the penalties are." The trial judge acknowledged that the amount
could have been discovered through simple investigation but said he
did not believe the Interest Act required such additional
investigation. Rather, he concluded that prejudgment interest only
pertained to those instruments where "the debt is set out or a
method of calculation or computation is set out within the
instrument."
 It is well established that an insurance policy is a written
instrument within the meaning of the statute authorizing
prejudgment interest. Ervin v. Sears, Roebuck & Co., 127 Ill. App.
3d 982, 991, 469 N.E.2d 243 (1984). Accordingly, prejudgment
interest may be recovered from the time money becomes due under the
policy. Ervin, 127 Ill. App. 3d at 991. Prejudgment interest will
be awarded for an amount due on an instrument in writing if the
amount was liquidated or easily computed. Oldenburg v. Hagemann,
207 Ill. App. 3d 315, 327, 565 N.E.2d 1021 (1991). If the amount
is determinable, interest can be awarded on money payable even when
the claimed right and the amount due require legal ascertainment. 
Martin v. Orvis Brothers & Co., 25 Ill. App. 3d 238, 251, 323
N.E.2d 73 (1974).
 We conclude that, if the plaintiffs prevail on their breach of
contract claim, prejudgment interest may be awarded since the liens
on the real estate for the payments of 1983 and 1984 taxes were
easily computed. The plaintiffs claimed damages totalling
$16,366.69 which reflected the 1983 and 1984 taxes paid by Phoenix
and the penalties thereon. We have no difficulty in concluding
that the damages were fixed and capable of exact calculation since
one need only look at the estimate of redemption to verify that
this amount was owed in order to redeem the subject property. 
Further, the amount "bec[a]me due" in accordance with section 2
when Epifanio went to redeem the property on the day after the
closing. 
 For the foregoing reasons, we reverse the trial court's award
of summary judgment in favor of the plaintiffs and remand this
cause for further proceedings consistent with the opinions
expressed herein.
 Reversed and remanded.
 HARTMAN, P.J., and SOUTH, J., concur.