FIRST NATIONAL BANK OF NORTHBROOK, N.A., Plaintiff-Appellee, v. STEWART TITLE GUARANTY COMPANY, Defendant-Appellant.

First District (1st Division)   No. 1—94—1838

Opinion filed April 8, 1996.—Rehearing denied May 10, 1996.

Mark A. Schramm, of Esposito, Heuel & Schramm, of Chicago, for appellant.

Jeffrey S. Blumenthal, of Kamm & Shapiro, Ltd., of Chicago, for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

In this case the title company issued a location note endorsement to the bank. The endorsement's description of the land was mistaken. The bank did not see or rely on the mistake until after its loss took place. The bank seeks to recover its loss from the title company. The trial judge said it could. We reverse the trial judge.

BACKGROUND

On January 2, 1982, Jeffrey Grossman (Grossman) and Donald Grauer (Grauer) entered into an agreement to form the "3105 MacArthur Drive Partnership." This partnership became the beneficial owner of American National Bank and Trust Company of Chicago land trust agreement number 55216, dated May 2, 1982, as well as American National Bank and Trust Company of Chicago land trust agreement number 54628. Together, these land trusts were the legal owners of the entire rectangularly shaped parcel of land, consisting of 47,798 square feet.

This rectangular parcel of land (herein referred to as lot 32) had a 160-foot frontage on MacArthur Drive and extended back approximately 298 feet. It was improved with a building, having the address of 3105 MacArthur Drive, Northbrook, Illinois.

In August 1983, Grossman applied to the First National Bank of

Northbrook (First National) for a $525,000 loan. This loan was to be secured by Grossman's personal guarantee and a mortgage on the real property commonly known as 3105 MacArthur Drive, Northbrook, Illinois. In connection with this loan request Grossman presented First National with an appraisal dated December 1981. This appraisal assessed the market value of lot 32 at $650,000. An update of the appraisal, dated August 10, 1983, reassessed the market value of the property at $700,000. This also was given to First National.

Unknown to First National, however, lot 32 was divided into two parcels with ownership vested in the two different land trusts. The front half, parcel A, encompassed 28,035 square feet. It consisted of the 160-foot frontage on MacArthur Drive and was improved with the building having the address of 3105 MacArthur Drive. The back line of parcel A, which divided it from the rear half, parcel B, was an irregular zig-zag pattern. Parcel B consisted mainly of the parking lot used by parcel A. Ownership of parcel A was vested in land trust agreement number 55216. Ownership of parcel B was vested in land trust agreement number 54628.

The loan committee of First National Bank approved the loan to Grossman and the partnership on August 9, 1983. When Grossman was asked to supply a survey and legal description of the property to be mortgaged as security for the loan, Grossman submitted a survey and legal description for parcel A only. The survey and legal description clearly indicated that the square footage of parcel A was about half the size of the property for which the appraisal was made. The discrepancy was not noticed.

In January 1984, First National closed on the mortgage which secured the loan to Grossman. The mortgage document gave First National a mortgage on the property held in trust agreement number 55216. The legal description for parcel A was incorporated into the mortgage document. It did not include parcel B.

On March 30, 1984, a lender's title insurance policy was obtained from Stewart Title Guaranty Company (Stewart). The legal description of parcel A was used in the title policy.

In 1988, the 3105 MacArthur Drive Partnership and Grossman wanted to refinance the mortgage. First National approved the refinance and new mortgage documents were prepared. Once again, the mortgage documents, which were signed and dated May 9, 1988, indicated that the property being mortgaged was the property held in land trust number 55216. The legal description for parcel A was used.

On June 28, 1988, the bank requested a title policy for the refinance from Stewart. Attached to the request was a copy of the

title policy issued in 1984, a copy of the 1983 survey, and the signed refinanced mortgage. A title policy for the property legally described in the mortgage (parcel A, not parcel B) was issued on August 5, 1988. In addition, however, a location note endorsement was issued by Stewart, which stated:

> *"The company hereby insures the insured against loss or damage which the insured shall sustain by reason of any inaccuracies in the following assurances:*
>
> (A) That, according to the plat of subdivision, the subject land has a street frontage of 160 feet, a depth of 298.71 feet, and is located 684.74 feet west of Anthony Trail and on the south side of MacArthur Drive.
>
> * * *
>
> This endorsement is made part of the Policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated; it does not modify any of the terms and provisions of the Policy and prior endorsements, if any." (Emphasis added.)

The location note endorsement referred to the plat of subdivision, which showed the property encompassing both parcel A and parcel B, instead of only parcel A, the property legally described in the mortgage and in the title policy. First National was not alerted to this discrepancy because, according to testimony presented at trial, the bank did not look at the title policy and endorsement when they were received.

The location note endorsement is the subject matter of this lawsuit.

In 1991, Grossman defaulted on the loan and First National commenced foreclosure proceedings. First National discovered then that the mortgage attached to parcel A and not to the entire rectangular parcel for which it had been given the appraisal. Now, for the first time, First National reviewed the title policy and discovered the mistake in the location note endorsement.

At the foreclosure sale, on October 22, 1991, First National purchased parcel A for $395,000, and a deficiency judgment for $165,756.48 was entered by the court against Grossman on October 30, 1991. First National sued Stewart for this deficiency, based on the mistake in the location note endorsement.

First National acquired the rear half of lot 32 (parcel B) as a result of a settlement agreement entered into with Grauer on August 12, 1991. In this settlement First National agreed to release Grauer, Grossman's partner in the 3105 MacArthur Drive Partnership, from liability for the deficiency. Parcel A and parcel B were recombined

and the whole property (lot 32) was then sold by First National for $400,000.

After a bench trial, the trial court rendered judgment in favor of First National and against Stewart for the amount of $160,756.48 plus court costs. The court refused to award prejudgment interest. Stewart appeals the judgment in favor of First National and First National cross-appeals the trial court's denial of prejudgment interest.

OPINION

The issue before this court is whether the trial court erred in ruling that Stewart was liable for First National's loss by virtue of its admittedly incorrect location note endorsement. Stewart contends that the trial court misinterpreted the nature and purpose of title insurance and the general principles governing the scope of a title insurer's liability.

■ The purpose of title insurance is to protect a transferee of real estate from the possibilities of loss through defects that may cloud title. *McLaughlin v. Attorneys' Title Guaranty Fund, Inc.*, 61 Ill. App. 3d 911, 378 N.E.2d 355 (1978). The policy insures against defects or clouds in the title to the land, not the land itself. *Rackouski v. Dobson*, 261 Ill. App. 3d 315, 318, 634 N.E.2d 1229 (1994).

In this case Stewart was asked to insure title to parcel A. Stewart issued a title policy for parcel A, defining the terms by which it insured the property against loss or damage sustained by the insured.

First National did not sue on any of the assurances in the policy of title insurance, nor did it allege or prove any defects in title to parcel A which would be covered by the policy terms Stewart obligated itself to insure against. First National's lawsuit was based on the fact that the property description contained in the location note endorsement did not match the legal description of the mortgaged land as contained in schedule A of the title policy (and in the mortgage). The location note endorsement ascribed to the "subject land" the dimensions of the entire lot 32 of the plat of subdivision, not the subdivided portion of parcel A.

Since First National's complaint was predicated on the inaccuracy in the location endorsement and the trial court imposed liability on Stewart for that reason, the correctness of the trial court's ruling turns on our determination of the purpose and meaning of the location note endorsement and the title insurer's scope of liability under such an endorsement. A review of case law reveals no cases interpreting location note endorsements. We will use general principles of contract interpretation.

■ Contracts of insurance should receive a practical, reasonable, and fair construction consonant with the apparent object and intent of the parties, viewed in light of their purpose. *Lawyers Title Insurance Corp. v. JDC (America) Corp.*, 52 F.3d 1575 (11th Cir. 1995). When construing title policies, as with any insurance policy, courts are not to distort the language of the policy to create ambiguities in order to rewrite the policy. *McLaughlin v. Attorneys' Title Guaranty Fund, Inc.*, 61 Ill. App. 3d 911, 378 N.E.2d 355 (1978). But where doubts or ambiguities in the title policy do exist, they should be liberally construed in favor of the insured. *Rackouski v. Dobson*, 261 Ill. App. 3d 315, 634 N.E.2d 1229 (1994).

The language of the endorsement states that Stewart "insures the insured *against loss or damage which the insured shall sustain by reason of any inaccuracies in the following assurances.*" (Emphasis added.) It is Stewart's position that First National did not incur a loss *by reason of* the inaccurate location endorsement. Therefore, Stewart argues, the trial court erred in finding liability under the endorsement.

■ The purpose of a location endorsement is described in 4 Real Property Service, Illinois, § 24:45, at 54 (Law. Co-op. 1988):

> "Location endorsements protect against loss *arising from* an inaccuracy in an assurance set forth in the endorsement giving a description of the property location, size, and improvement securing the loan. This description also allows the lender to verify that the property insured matches the lender's appraiser's report and legal description in the mortgage. These endorsements are generally used only in metropolitan areas where it is more difficult for a lender to verify this information for itself." (Emphasis added.)

Stewart argues that First National did not sustain a loss "by reason of" the inaccuracy or that the loss did not "arise from" the inaccuracy because the uncontested testimony of First National's agent, Miss Pumphrey, was that the title policy and endorsement were never relied on or even reviewed before the refinance agreement was approved and completed.

First National disagrees, arguing that reliance is not necessary. It is First National's position that liability arises from the technical breach of the assurance in the endorsement. First National's position, however, is not supported by case law.

*United States v. City of Flint*, 346 F. Supp. 1282 (E.D. Mich. 1972), cited by First National, does not suggest that reliance is unnecessary. In *City of Flint* the court found that when the United States purchased the subject property, the property was encumbered with tax liens which attached by operation of Michigan tax law. The title policy provided in schedule B:

"This policy does not insure against loss or damage by reason of *** current or delinquent taxes and assessments as follows: [(no exceptions were listed by the insurer)]."

Reviewing the purpose of title policies, the court stated that because the average purchaser does not have the skill or means to determine whether a title is free of defects, he relies on a title insurer to make this determination and insure against loss due to hidden defects. The court then held that the United States sustained a loss or damages by reason of tax liens on the property. The title insurer, having failed to exclude any tax liabilities in schedule B, had assumed the obligation to satisfy the tax liability by its title insurance contract.

In *W.E. Erickson Construction, Inc. v. Chicago Title Insurance Co.*, 266 Ill. App. 3d 905, 641 N.E.2d 861 (1994), the court found no liability on the part of the title insurer under circumstances close to those in this case. In *Erickson,* C-K acquired a piece of property by quit-claim deed and decided to build a water slide on the property. Subsequently, Erickson Construction agreed to accept C-K's interest in the subject property as security for construction loans it made to C-K. C-K transferred its interest in the property to a land trust which named Erickson Construction as the beneficiary of the trust.

Two days *after* accepting C-K's interest in the property as security, Erickson Construction requested a title commitment from Chicago Title. The title commitment indicated that title to the property was held by the land trust. Two months later, however, C-K was notified that the federal government held title to the property and that C-K was encroaching on the land.

Erickson Construction sued Chicago Title on the title commitment which stated:

"Liability of the Company under this Commitment shall be *** only for *actual loss incurred in reliance hereon* in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment." (Emphasis added.) 266 Ill. App. 3d at 908.

The court held that the title company had no liability because Erickson Construction acquired its interest in the property before obtaining the title commitment. The loss, therefore, was not "incurred in reliance" on the title commitment. The title commitment meant what it said.

█ In the present case, the purpose of a location endorsement is to provide the lender with a means to verify the size, location, and improvements on the mortgaged property. The endorsement insured

"against loss *** sustained by reason of any inaccuracies" in the assurance that the subject property had a depth of 298.71 feet. This description was a mistake. The mortgaged property did not extend to a depth of 298.71 feet. But First National, indisputably, did not use the endorsement to verify the size, location, or improvements on the property. First National did not look at the endorsement until Grossman defaulted. The endorsement had nothing to do with the bank's decision to refinance the loan.

Stewart did not make an empty or illusory promise to the bank. Stewart promised to compensate the bank for any losses resulting from reliance on the endorsement note. The bank paid a premium for that promise. The facts of this case do not suggest the promise was broken. The bank's loss was not sustained by reason of any inaccuracies in the location endorsement.

CONCLUSION

We conclude that the trial court's judgment in favor of the First National Bank was in error. We reverse that judgment and enter judgment in favor of Stewart. There is no reason to consider First National's cross-appeal in which it contests the trial court's denial of prejudgment interest.

Reversed.

BUCKLEY and BRADEN, JJ., concur.