OAK PARK TRUST AND SAVINGS BANK, as Trustee, *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. INTERCOUNTY TITLE COMPANY OF ILLINOIS *et al.*, Defendants-Appellants and Cross-Appellees.

First District (5th Division)   Nos. 1—95—2651, 1—95—2783 cons.

Opinion filed March 27, 1997.

Esposito, Heuel & Schramm, of Chicago (Mark A. Schramm, of counsel), for appellants.

Ashman & Stein, of Chicago (Gary D. Ashman and David M. Bagdade, of counsel), for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiffs, Oak Park Trust & Savings Bank, as trustee under trust No. 9585 (Oak Park Bank), and John R. Epifanio, initiated this action against the defendants, Intercounty Title Company of Illinois (Intercounty) and Stewart Title Guaranty Company (Stewart), claiming that the defendants, as title insurers, breached their contract and made fraudulent misrepresentations by failing to inform the plaintiffs of certain liens on a parcel of real estate. The trial court entered summary judgment in favor of the plaintiffs on the breach of contract claim and in favor of the defendants on the fraud claim. The defendants appeal summary judgment on the breach of contract claim. The plaintiffs cross-appeal only from the trial court's denial of prejudgment interest. We reverse and remand.

Prior to November 1985, Epifanio agreed to purchase a piece of property from his nephew. The attorney who represented Epifanio in this transaction ordered a title commitment from Intercounty and received this document sometime prior to the closing on November 18, 1985. Defendant Stewart issued the title commitment, effective October 31, 1985, which contained the following pertinent language under the proposed exceptions:

"1. General Real Estate Taxes for the year 1985. Tax Number 16—07—302—005, Volume 141.

Note: The amount of the 1984 taxes was $6,550.82.
Note: The 1985 taxes are not yet due and payable.
Note: The 1982 taxes were sold September 20, 1984, for the amount of $8,242.00, to Phoenix Bond and Indemnity Company (Phoenix)."

After Epifanio learned of the sale of the 1982 taxes, he renegotiated the sales price of the property with his nephew in order to account for the cost to redeem the 1982 taxes purchased by Phoenix.

Epifanio's attorney testified in his deposition that, shortly after receiving the commitment and prior to the closing, he contacted Walter Joy, an Intercounty representative, to request that Intercounty order an estimate of redemption. According to the attorney, Joy gave his assurances that there were no liens for 1983 and 1984 real estate taxes. Joy allegedly agreed to mail the estimate of redemption to Epifanio's attorney and confirmed that the parties could close as scheduled. The attorney said he inferred from their conversation that Joy had the estimate of redemption in front of him, but he could not verify this fact. Epifanio's attorney presented an estimate, dated November 14, 1985, which he allegedly received in the mail from Intercounty after the parties had closed and Epifanio had already redeemed the property.

Joy's affidavit stated that he did not recall either ordering or being asked to order the estimate of redemption for Epifanio's attorney. He further stated that he did not possess, nor did he ever imply that he possessed, a completed estimate of redemption at any time during their telephone conversations. Joy also denied stating that there were no liens for the 1983 and 1984 real estate taxes.

The closing took place on November 18, 1985. On November 19, Epifanio went to redeem the property and pay the 1982 taxes. When he ordered an estimate of redemption, he learned, allegedly for the first time, that Phoenix had also paid the 1983 and 1984 taxes, resulting in the additional sum of $16,366.69 due in order to redeem the property. Epifanio paid this additional amount along with the amount due for the 1982 taxes. He thereafter made demand upon the defendants to reimburse him for the loss he incurred by relying on the title commitment, which had only noted the 1982 tax sale. The defendants refused to pay.

On April 20, 1988, the plaintiffs, Oak Park Bank and Epifanio, filed this action seeking declaratory relief and alleging fraudulent misrepresentation against the defendants. The case was dismissed for want of prosecution on March 16, 1989, but the dismissal order was vacated six weeks later. The record indicates no further action occurred until the plaintiffs filed a motion for summary judgment on

September 28, 1993. Thereafter, the defendants filed a cross-motion for summary judgment. On December 13, 1993, the trial judge struck the plaintiffs' request for declaratory relief and transferred this case to the law division of the circuit court of Cook County. In January 1994, the plaintiffs filed an amended complaint for (1) breach of contract, (2) bad faith under the Illinois Insurance Code (215 ILCS 5/1 *et seq.* (West 1992)), and (3) fraud. After the defendants successfully moved to dismiss the bad-faith claim, the plaintiffs filed their second amended complaint alleging breach of contract and fraud.

On June 9, 1995, the trial court entered summary judgment in favor of the plaintiffs on their breach of contract claim and against the plaintiffs on the fraud claim. The court denied the plaintiffs' motion for prejudgment interest. The defendants appealed the award of summary judgment on the breach of contract claim and the plaintiffs cross-appealed from the trial court's denial of prejudgment interest.

■ We first address the defendants' contention that the trial court erred in granting summary judgment in favor of the plaintiffs. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994). The court must consider the affidavits, depositions, admissions, exhibits and pleadings on file and construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *In re Estate of Hoover*, 155 Ill. 2d 402, 410-11, 615 N.E.2d 736 (1993). A triable issue of fact exists where there is a dispute as to material facts or where the material facts are undisputed but reasonable persons might draw different inferences from those facts. *Hoover*, 155 Ill. 2d at 411. This court reviews a summary judgment *de novo*. *Hoover*, 155 Ill. 2d at 411.

■ The purpose of title insurance is to protect a transferee of real estate from possible losses through defects that may cloud title. *McLaughlin v. Attorneys' Title Guaranty Fund, Inc.*, 61 Ill. App. 3d 911, 915, 378 N.E.2d 355 (1978); *Radovanov v. Land Title Co. of America, Inc.*, 189 Ill. App. 3d 433, 437, 545 N.E.2d 351 (1989). The prospective real estate purchaser relies on the title insurer's search when he decides whether or not to purchase the property; accordingly, he expects the insurer (1) to have researched the applicable law, as well as the records, before issuing the commitment, and (2) to provide warnings about areas in which he might find title surprises. *Radovanov*, 189 Ill. App. 3d at 438.

■ General principles of insurance contract interpretation provide that such contracts should receive a practical, reasonable, and fair construction consonant with the apparent object and intent of the parties, viewed in light of their purpose. *First National Bank v. Stew-*

*art Title Guaranty Co.*, 279 Ill. App. 3d 188, 193, 664 N.E.2d 310 (1996). As with any insurance policy, courts are not to distort the language of the title policy to create ambiguities in order to rewrite the policy. *McLaughlin*, 61 Ill. App. 3d at 914.

The title insurance commitment issued here contains the following pertinent language:

> "The policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of [Stewart].
>
> A. Defects, liens, *** first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment."

The commitment also expressly excludes from the coverage of the policy "(5) [t]axes, or special assessments which are not shown as existing liens by the public records."

The defendants claim that they were under no obligation to provide any further information regarding the 1983 and 1984 taxes since to do so would go beyond its duties as defined by the commitment. The defendants argue that they contracted with the plaintiffs to disclose those items affecting marketability of title of which they had actual or constructive notice based on a review of the public records. According to the defendants, an estimate of redemption is not an existing public record since it is created and calculated upon a specific request. The defendants maintain that they included in the title commitment all of the pertinent real estate tax information available from the public records as of the effective date of the commitment.

Public records containing real estate tax information are maintained by the Cook County clerk (Clerk) and by the Cook County collector (Collector). Section 253 of the former Revenue Act of 1939 (Act) (Ill. Rev. Stat. 1983, ch. 120, par. 734, repealed by Pub. Act 88—455, art. 32, § 32—20, eff. January 1, 1994) provided that property sold under the provisions of the Act could be redeemed by owners and persons interested in the real estate by paying the Clerk the amount for which the property was sold together with the amount of all taxes, special assessments, and penalties paid by the tax purchaser for each year between the time of the payment of the subsequent tax or special assessment and the time of redemption. It was the Clerk's duty to include in the certificate of deposit for redemption the amount of the subsequent taxes, special assessments, redemptions from subsequent forfeitures or tax sales, and other fees paid by the tax purchaser or holder of the tax certificate. This section further provided:

"The county clerk shall not be required to include any subsequent taxes, special assessments, or redemptions from subsequent forfeitures or tax sales, fees of the registrar of titles and fees and costs of the clerk of the circuit court in his certificate of deposit for redemption, nor shall the payment thereof be a charge upon the land sold for taxes, unless the purchaser, assignee, or holder of the tax certificate of sale shall have filed and have posted by the county clerk on the tax judgment, sale, redemption and forfeiture record, not less than 30 days prior to the expiration of the period of redemption, an official, original or duplicate receipt for the payment of subsequent taxes, special assessments, redemptions from subsequent forfeitures or tax sales, fees of the registrar of titles and fees and costs of the clerk of the circuit court and it shall be the duty of the tax collector, county clerk, clerk of the circuit court and registrar of titles to furnish duplicate receipts." Ill. Rev. Stat. 1983, ch. 120, par. 734.

Former section 196 of the Act concerned the recording of tax payments in the Collector's warrant books and stated as follows:

"Whenever any person pays the taxes charged on any property, the collector shall enter such payment in his book, specifying by whom paid (if other than the assessee and if so requested), the amount paid, what year paid for, and the property and value thereof on which the same was paid, according to its description in the collector's books ***; and such entry and any receipt, if given, shall bear the genuine or facsimile signature or printed name of the collector or his deputy receiving such payment; and evidence of payment shall consist of the taxpayer's cancelled check or money order and the receipt, where they exist, together with the entry in the collector's books. The collector or his deputy shall be required to issue a receipt to a taxpayer only if (1) the taxpayer makes a payment in cash, or (2) the taxpayer requests a receipt as evidence of his payment. *** The collector shall enter, opposite each tract or lot of land, the name and post office address of the person paying tax if such person is other than the assessee and has requested a receipt specifying by whom the tax was paid." Ill. Rev. Stat. 1983, ch. 120, par. 677.

The record indicates that counsel for the defendants referred to the relevant page from the Collector's warrant books at the summary judgment hearing to support his contention that the Collector's records contained no information beyond the fact that the taxes for 1983 and 1984 were marked "paid," whereas the 1982 taxes were specified as being sold to Phoenix. This document was not included in the record on appeal. The plaintiffs maintained that a public record naming the taxpayer for 1983 and 1984 must have existed since the

Clerk would not have been able to compile the estimate of redemption without determining who paid the taxes for those years. They further argued that the Clerk's records must have named the tax buyer or else Phoenix would have lost its entitlement to reimbursement on redemption. According to the plaintiffs, the only reasonable inference was that the Clerk had a record of the entity that made the 1983 and 1984 tax payments.

We agree that if Phoenix's payment of the 1983 and 1984 taxes is established as being part of the public record on or before October 31, 1985, the effective date of the title commitment, then the defendants unquestionably were obligated to disclose this information in the title commitment. However, the record indicates that the plaintiffs put forth nothing which tended to prove that the tax information disclosing Phoenix as the taxpayer for 1983 and 1984 was available in the public records maintained by the Clerk or the Collector on or before October 31, 1985.

The plaintiffs contend that the copy of the estimate of redemption dated November 14, 1985, which Epifanio's attorney allegedly received from Intercounty after the November 18 closing, proved that Phoenix's payment of the 1983 and 1984 taxes was a matter of public record prior to the closing and that the defendants had actual knowledge thereof but failed to disclose this fact to the plaintiffs. However, this copy of the estimate of redemption does nothing more than indicate that the information was available on November 14, 1985, whereas the commitment excludes from coverage those "[d]efects, liens, *** first appearing in the public records or attaching subsequent to the effective date hereof [October 31, 1985]."

■ It was the plaintiffs' burden to produce evidence tending to prove that the information was a matter of public record on or before October 31, 1985, and thus subject to disclosure. Since the plaintiffs did not produce any such evidence, they failed to meet their burden of establishing their right to judgment as a matter of law. Reviewing the evidence in the light most favorable to the defendants, we hold that the trial court erred in granting summary judgment in favor of the plaintiffs.

Under normal circumstances, our reversal of the summary judgment entered in favor of the plaintiffs would render it unnecessary to decide the plaintiffs' cross-appeal from the trial court's denial of prejudgment interest. However, we will address the question for the purpose of instruction should this issue arise on remand.

■ Section 2 of the Interest Act provides:

"Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any

bond, bill, promissory note, or other instrument of writing \*\*\*."
815 ILCS 205/2 (West 1994).

The title commitment here provided in pertinent part:

"6. Determination and Payment of Loss

(a) The liability of the Company under this policy shall in no case exceed the least of:

(i) the actual loss of the insured claimant; or

(ii) the amount of insurance stated in Schedule A.

(b) The Company will pay, in addition to any loss insured against by this policy, all costs imposed upon an insured in litigation carried on by the Company for such insured, and all costs, attorneys' fees and expenses in litigation carried on by such insured with the written authorization of the Company.

(c) When liability has been definitely fixed in accordance with the conditions of this policy, the loss or damage shall be payable within 30 days thereafter."

The trial judge denied prejudgment interest to the plaintiffs based on his conclusion that "a liquidated debt is a debt that is capable of being calculated from the instrument" and "[t]here is nothing in the policy that states what the taxes are for 1983 and 1984 or what the penalties are." The trial judge acknowledged that the amount could have been discovered through simple investigation but said he did not believe the Interest Act required such additional investigation. Rather, he concluded that prejudgment interest only pertained to those instruments where "the debt is set out or a method of calculation or computation is set out within the instrument."

It is well established that an insurance policy is a written instrument within the meaning of the statute authorizing prejudgment interest. *Ervin v. Sears, Roebuck & Co.*, 127 Ill. App. 3d 982, 991, 469 N.E.2d 243 (1984). Accordingly, prejudgment interest may be recovered from the time money becomes due under the policy. *Ervin*, 127 Ill. App. 3d at 991. Prejudgment interest will be awarded for an amount due on an instrument in writing if the amount was liquidated or easily computed. *Oldenburg v. Hagemann*, 207 Ill. App. 3d 315, 327, 565 N.E.2d 1021 (1991). If the amount is determinable, interest can be awarded on money payable even when the claimed right and the amount due require legal ascertainment. *Martin v. Orvis Brothers & Co.*, 25 Ill. App. 3d 238, 251, 323 N.E.2d 73 (1974).

■ We conclude that, if the plaintiffs prevail on their breach of contract claim, prejudgment interest may be awarded since the liens on the real estate for the payments of 1983 and 1984 taxes were easily computed. The plaintiffs claimed damages totalling $16,366.69, which reflected the 1983 and 1984 taxes paid by Phoenix and the penalties thereon. We have no difficulty in concluding that the dam-

ages were fixed and capable of exact calculation since one need only look at the estimate of redemption to verify that this amount was owed in order to redeem the subject property. Further, the amount "bec[a]me due" in accordance with section 2 when Epifanio went to redeem the property on the day after the closing.

For the foregoing reasons, we reverse the trial court's award of summary judgment in favor of the plaintiffs and remand this cause for further proceedings consistent with the opinions expressed herein.

Reversed and remanded.

HARTMAN, P.J., and SOUTH, J., concur.