15 December 1999

No.  2--98--1196 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

NOTARO HOMES, INC.,          ) Appeal from the Circuit Court

          ) of Du Page County.             

Plaintiff-Appellant,      )

                               )

v.                             ) No. 97--MR--730

                               )

CHICAGO TITLE INSURANCE        )

COMPANY, ) Honorable

                               ) Robert E. Byrne,

Defendant-Appellee.       ) Judge, Presiding.

JUSTICE GALASSO delivered the opinion of the court:

On October 7, l997, plaintiff, Notaro Homes, Inc., filed a four-count complaint against defendant, Chicago Title Insurance Company, alleging that defendant’s failure to disclose to it the existence of a recorded amendment (amendment) to the City of McHenry’s (City) zoning ordinance resulted in the purchase of a City lot upon which an intended apartment building could not be built.  In count I, plaintiff sought a declaratory judgment regarding the parties’ rights under the title insurance policy. Count II alleged breach of contract.  In count III, plaintiff pleaded negligent misrepresentation in the title insurance commitment and policy.  Count IV alleged a violation of the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 
et seq
. (West 1996)).  Defendant filed a motion to dismiss all four counts pursuant to sections 2--615 and 2--619 of the Code of Civil Procedure (735 ILCS 5/2--615, 2--619 (West 1996)).  Subsequently, plaintiff voluntarily dismissed count I.  After a hearing, the trial court granted the motion to dismiss counts II through IV.  This timely appeal followed.

On appeal, plaintiff raises the following issues: (1) whether the trial court erred in dismissing counts II through IV and (2) whether plaintiff should be allowed to replead counts II through IV.

The record reveals the following facts.  On November 6, l967, the City’s governing body passed ordinance No. 0-67-36.5, which amended the zoning ordinance to prohibit the construction of more than 20 dwelling units on 10 lots and a portion of an eleventh lot.  The property acquired by plaintiff was subject to the amendment’s restrictions.  The amendment included a legal description of the property affected and was later recorded on June 29, 1969, with the McHenry County recorder as document No. 69-9530.

In late 1994, plaintiff contracted to purchase a vacant lot in the City.  This lot was located immediately adjacent to the same or similarly sized lots, each of which had been improved with four-

unit apartment buildings.  Plaintiff wanted to construct, lease, and/or sell a three-unit apartment building on the lot, which was located within an R-4 multifamily zoning district.  The total 1993 property taxes billed on the lot amounted to $84.36.  Prior to purchasing the property, plaintiff received a title insurance commitment from defendant.  The commitment did not disclose the existence of any defects, liens, or encumbrances against the subject lot.  In early January, l995, plaintiff purchased the lot for $30,000.  On January 9, l995, defendant issued a title insurance policy, which made no mention of the amendment.

Subsequent to its purchase of the lot, plaintiff was advised by the City of the amendment to the zoning ordinance and was told that no dwelling units could be constructed on plaintiff’s lot.  In March of l995,
 
plaintiff filed a formal claim with defendant, which denied the claim in April 1995.  In its complaint, plaintiff alleged losses and expenses in excess of $80,000.

At the conclusion of the hearing on defendant’s motions to dismiss, the trial court stated in relevant part:

"I am going to dismiss the case with prejudice.  I believe the policy controls.  The policy says they didn’t have to do this.  I respectfully disagree with [plaintiff’s counsel] as to the ordinance enforcement encumbering the title.  I think the policy specifically excludes this action. The Plaintiff here is not an individual without experience in zoning issues.  It is Notaro Homes, Incorporated.  It should have known to check the zoning rather than rely on the title commitment.  This is a sophisticated business entity, not just some individual buying a lot. *** I am going to give [plaintiff] a chance to replead.  I am saying in my opinion, based on this contract, that you could not plead a set of facts that would give you a cause of action."

The appropriate standard of review was set out by this court in 
Joseph v. Collis
, 272 Ill. App. 3d 200 (1995):

"When a complaint fails to state a cause of action or shows on its face that the plaintiff is not entitled to the relief sought, the complaint is subject to a motion to dismiss.  [Citation.]  *** A section 2--615 motion attacks the legal sufficiency of the complaint by asserting that it fails to state a cause of action upon which relief can be granted. [Citation.] In considering a motion to dismiss under section 2--615, all well-pleaded facts are admitted and must be taken as true.  [Citation.]  Conclusions of law or conclusions of fact *** are not admitted.  [Citation.]  On review, the allegations of the complaint are to be interpreted in the light most favorable to the plaintiff.  [Citation.]  A complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the allegations which would entitle the party to relief.  [Citation.]

***

A reviewing court is not required to defer to the trial court’s judgment on a motion to dismiss and will review the matter 
de
 
novo
."  
Joseph
, 272 Ill. App. 3d at 206.

Plaintiff initially argues that defendant breached its contract with plaintiff by failing to report accurately all defects in title and all liens and encumbrances.  Specifically, plaintiff argues that the amendment was an encumbrance affecting the marketability of title; that defendant violated its contractual duty to report accurately all defects in title and all liens and encumbrances of record; that the recording of the amendment amounted to its enforcement and, thus, that the amendment fell within the exception to the exclusion; and that the amendment also fell within the exception to the exclusion because it constituted notice of the defects, liens, or encumbrances upon the property resulting from restrictions contained in it.  In response, defendant generally argues that it was not liable under its contract with plaintiff.  Specifically, defendant contends that the amendment was not a defect, lien, or encumbrance that affected the marketability of title and that, under the policy, defendant was not obligated to disclose the amendment.

Before addressing these arguments, we will briefly address a dispute between the parties as to whether any potential contractual liability arises under the subject title commitment 
and
 the title policy.  Plaintiff maintains that we are required to consider any contractual liability of defendant under both the title commitment and title policy, while defendant argues that the title commitment expressly states that all liability under said commitment ceased to exist when the title policy was issued.  We note that the determination of this argument is of little consequence, as the trial court based its dismissal of this cause on other considerations.  We conclude that, based upon the express language of the title policy, any contractual liability of defendant would arise solely under the policy.

The title policy’s section entitled "Exclusions From Coverage" contains the following language:

"The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damages, costs, attorneys’ fees or expenses which arise by reason of:

1. (a) Any law, ordinance, or governmental regulation (including but not limited to building and zoning law, ordinance, or regulation) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land *** except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy."

The purpose of title insurance is to protect the transferee of real estate from the possibilities of loss through defects that may cloud the title.  
First
 National Bank v. Stewart Title Guaranty Co.
, 279 Ill. App. 3d 188, 192 (1996).  The title insurance policy insures against defects or clouds in the title to the land, not the land itself.  
First
 
National Bank
, 279 Ill. App. 3d at 192.  Further, contracts of insurance should receive a practical, reasonable, and fair construction consonant with the apparent object and intent of the parties viewed in light of their purpose.  
First
 National Bank
, 279 Ill. App. 3d at 193.  Where provisions in an insurance policy are clear and unambiguous, a court will apply the provisions as they are written, giving the policy’s words their plain and ordinary meaning.  
Britamco Underwriters, Inc. v. J.O.C. Enterprises, Inc.
, 252 Ill. App. 3d 96, 100 (1993).  Courts will not strain to find an ambiguity where none exists.  
Britamco Underwriters
, 252 Ill. App. 3d at 100.

Plaintiff first maintains that the amendment was an encumbrance adversely affecting the marketability of title.  We do not agree.  The subject policy defines "unmarketability of title" thusly:

"[A]n alleged or apparent matter affecting the title to the land, 
not excluded or excepted from coverage
, which would entitle a purchaser of the estate or interest described in Schedule A to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title."  (Emphasis added.)

The instant amendment is expressly excluded from coverage. Accordingly, even assuming 
arguendo
 that the amendment is an encumbrance, under the terms of the policy the existence of the recorded amendment cannot subject defendant to contractual liability for any potential unmarketability of the subject title.

Moreover, the term "encumbrance" is defined thusly:

"Any right to, or interest in, land which may subsist in another to [the] diminution of its value, but consistent with the passing of the fee. [Citation.]  A claim, lien, charge, or liability attached to and binding real property; 
e.g.
, a mortgage; judgment lien; mechanics’ lien; lease; security interest; easement or right of way; accrued and unpaid taxes."  Black’s Law Dictionary 527 (6th ed. 1990).  

Under this definition, we are unable to see how the subject amendment could be viewed as an encumbrance, as it does not relate to any of the examples of an encumbrance.

We would further add, at this point, that the amendment does not constitute a lien upon the subject property.  Nor does it constitute a defect that would cloud the title to the property. Plaintiff has confused marketability of title with marketability of land.  Marketable title has been generally described as title that is not perfect but is reasonably secure against litigation or flaws decreasing the market value.  Based on the record before us, we view the subject title as reasonably secure against litigation.  For example, there is no cloud in the title similar to the one found in 
Rackouski v. Dobson
, 261 Ill. App. 3d 315 (1994), where the encroachment of the policyholder’s barn on neighboring property was the cause of substantial litigation.  Moreover, we do not necessarily see the amendment as a flaw that on its face would decrease the subject property’s market value.

Additionally, plaintiff contends that defendant did not perform its contractual duty to report accurately all defects in title and all liens and encumbrances.  This assertion ignores the fact that defendant was entitled to limit that duty to report, by excluding from coverage losses from zoning ordinances that restricted the occupancy, use, or enjoyment of the land.  The language of the title policy expressly contained such limiting language, and plaintiff could have rejected the contract if it was not pleased with such an exclusion.  Having voluntarily signed the subject contract, plaintiff cannot now complain of a contractual duty to report that was expressly excluded from coverage.  Moreover, as we have concluded above, the amendment is not a defect in title, lien, or encumbrance that would create a cause of action for breach of contract.

Plaintiff’s citation to 
Pohrer v. Title Insurance Co.
, 652 F. Supp. 348 (N.D. Ill. 1987), is not persuasive. 
Pohrer
 involved the failure of the title company to inform the plaintiff of special service area tax liens recorded against the subject property.  Such liens are not at issue here.

We next address plaintiff’s contention that the recording of the amendment constituted enforcement of said ordinance by the City and therefore the amendment falls within the exception to the subject exclusionary language.  However, plaintiff cites no support for this assertion.  Moreover, Black’s Law Dictionary defines "enforcement" thusly: "The act of putting something such as a law into effect; the execution of a law; the carrying out of a mandate or command."  Black’s Law Dictionary 528 (6th ed. 1990). We find nothing in that definition that supports the view that recording the amendment is an act of enforcement.  Further, the subject zoning ordinance expressly states that the ordinance shall be "in full force and effect from and after its passage and approval according to law."  Thus, the recording of the amendment adds nothing in terms of its enforcement.  Accordingly, we conclude that plaintiff’s contention is without merit.

Plaintiff also argues that the recording of the amendment constituted "notice to all of the defects, liens, or encumbrances upon the property resulting from the restrictions contained in said [amendment]."  Plaintiff’s assertion misapprehends the subject language of the exception, which addresses circumstances wherein notices of a defect, lien, or encumbrance resulting from 
violations or alleged violations
 affecting the land have been recorded in public record as of the date of policy.  The record contains no such notices resulting from violations or alleged violations affecting the land.  Accordingly, plaintiff’s argument must fail.

Plaintiff’s final contention regarding the exclusionary clause is that it is inconsistent with the affirmative obligations under the subject title policy.  Plaintiff maintains that, in viewing the policy as a whole, it is clear that defendant specifically undertook to insure plaintiff against any defects, liens, or encumbrances upon the property and that the exclusionary clause cannot be used to negate defendant’s duty to report the amendment’s existence.  In response, defendant argues that the exclusionary clause creates no inconsistencies and that it is applicable to the facts of this case.

Initially, we note that plaintiff's argument is essentially a variation on an argument that is addressed above, namely, that defendant has a contractual duty to report all defects, liens, and encumbrances.  We find no inconsistencies in the policy.  As indicated above, the subject amendment is not a defect in the title nor is it a lien or an encumbrance.  Defendant was entitled to exclude coverage of zoning ordinances from the title policy.  Plaintiff has not cited a case that holds that a title insurer is prohibited from excluding certain recorded instruments such as zoning ordinances from coverage.

Moreover, the cases cited by plaintiff are distinguishable. For example, 
Radovanov v. Land Title Company of America, Inc.
, 189 Ill. App. 3d 433 (1989), involved title insurance for a building that was the subject of a lawsuit to enforce building code violations.  The title policy exclusionary language included the phrase "the effects of violations of building ordinances." 189 Ill. App. 3d at 438.  Defendant maintained that such language included pending building-code-violation litigation.  The 
Radovanov
 court noted that such a construction would be in direct conflict with the policy’s guarantee to insure against loss or damage sustained due to the unmarketability of title.  The court concluded that subject exclusionary language did not exclude from coverage
 
damages caused
 
by the pending housing-code-violation lawsuit.  In the appeal at bar, as discussed above, there are no similar issues related to unmarketability of title.

Further, 
1119 Delaware v. Continental Land Title Co.
, 16 Cal. App. 4th 992, 20 Cal. Rptr. 2d 438 (1993), is not  persuasive.  In that case, the plaintiff purchased an apartment building and subsequently learned that the property was restricted by a conditional use permit requiring a minimum of one occupant in the building to be 62 years of age or older or physically handicapped.  Also, 
1119 Delaware
 involved a state statute that required the recording of the subject conditional use permit and also provided that the effect of recording said permit constituted constructive notice.  There is no corresponding Illinois statute.  Additionally, the 
1119 Delaware
 court concluded that the conditional use permit was not a zoning ordinance and, thus, was not expressly excluded from coverage. Here, the subject governmental action was an amendment to the zoning ordinance that was expressly excluded from coverage.

In conclusion, we find no ambiguities or inconsistencies in the policy’s pertinent language.  The "Exclusions From Coverage" section is susceptible to only one construction, namely, that any losses or damages, costs, attorney fees, or expenses arising from zoning laws that restrict the occupancy, use, or enjoyment of the land will not be paid by defendant.  The exception to this section is not applicable to the facts of this case.  Accordingly, we conclude that the trial court properly dismissed count II of the complaint.

We now turn to plaintiff's allegation that the trial court erred when it dismissed count III of its complaint alleging negligent misrepresentation.  We note that defendant's motion to dismiss count III was based on section 2--619 of the Code of Civil Procedure (735 ILCS 5/2--619 (West 1996)).  Therein defendant argued (1) that paragraph 15 of the insurance policy provided that plaintiff's exclusive remedy was restricted to a suit under the contract of insurance; (2) that defendant had no duty to report any information to plaintiff; and (3) that plaintiff was barred under the 
Moorman
 doctrine (
Moorman Manufacturing Co. v. National Tank Co.
, 91 Ill. 2d 69 (1982)) from recovering purely economic damages in tort where there is a contract between the parties.  In granting defendant's motion to dismiss, the trial court did not specifically state its basis for dismissing each of the complaint's four counts.  Instead it generally stated, "I am saying in my opinion, based on this contract, that [plaintiff] could not plead a set of facts that would give [it] a cause of action."  Thus, while the motion to dismiss count III was based on section 2--619, it is apparent that the trial court dismissed this count on the basis of section 2--

615.

In Board of Education v. A, C & S, Inc.
, 131 Ill. 2d 428, 452, (1989), the supreme court stated the following:

"In 
Soules v. General Motors Corp.
 (1980), 79 Ill. 2d 282, 286, we formulated the elements in a fraudulent misrepresentation as: (1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance.  Negligent misrepresentation has essentially the same elements, except that the defendant's mental state is different.  The defendant need not know that the statement is false.  His own carelessness or negligence in ascertaining its truth will suffice for a cause of action.  [Citation.]  For negligent misrepresentation, a plaintiff must also allege that the defendant owes a duty to the plaintiff to communicate accurate information."

Here plaintiff alleges that it ordered a commitment for title insurance from the defendant, the purpose of which was to obtain information regarding the condition of title and the marketability of title.  Plaintiff further alleges that the defendant, in searching the condition of title, negligently failed to set forth a recorded ordinance that substantially affected the use of the property, the effect of which impaired the property's marketability.

Defendant argues that count III, negligent misrepresentation, should have been dismissed for two reasons.  First, that the issued policy bars plaintiff's negligence claim and, second, that the application of the 
Moorman
 doctrine also precludes recovery.

We believe defendant's first contention is without merit. Plaintiff's allegation of negligent misrepresentation is not based upon the language of the title insurance policy.  Plaintiff alleges that the negligent misrepresentation occurred when defendant issued its commitment for title insurance that contains no exculpatory language.

The commitment for title appears in the record at pages 21 through 24 and is referred to in plaintiff's complaint as Exhibit "A."  There is no exculpatory language in the commitment for title.

The policy of insurance, based upon the contents of the commitment for title, is a separate insurance policy that would be issued at the request of the proposed insured.  It is conceivable from the language contained therein that the proposed insured, after examining the commitment letter, would not order the separate policy of insurance.  It appears, based upon schedule B, paragraph 2, of the commitment letter, that there will be a charge for the commitment whether or not a policy is issued.  The commitment for title may merge into the policy of insurance for the purpose of determining the contractual obligations of the parties.  However, the language in the commitment letter or the policy is not such that a plaintiff's claim for negligent misrepresentation would be extinguished.  The scope and extent of a tort claim release depend on the intention of the parties as expressed therein.  Scope and extent include the existence of known claims.  
Rakowski v. Lucente
, 120 Ill. App. 3d 715, 720 (1983).

Accordingly, the exclusive remedy provisions contained in the policy of insurance are not binding upon a plaintiff who sues not on the policy, but on the commitment letter.

We now examine whether the 
Moorman
 doctrine applies.  Plaintiff acknowledges that the 
Moorman
 doctrine does prohibit a recovery in tort for purely economic losses but argues that the doctrine does not apply to those in the business of supplying information for the guidance of others in their business transactions and, in this case, the above exception applies.

We believe the exception to 
Moorman
 does apply to cases where a prospective purchaser orders a commitment for title insurance and in reliance thereon enters into a business transaction.  When a title insurance company issues a commitment, it is in fact in the business of supplying information for the guidance of others in their business transactions, whether the transaction is the decision to purchase property or the decision to simply purchase the title insurance policy.  It owes a duty not to be negligent in providing the information, and, if negligent, the injured party may recover economic damages.

By this decision, we are not holding that failure to set forth the recorded ordinance was a negligent misrepresentation.  Whether the ordinance impacted the use and value of the property to the extent that it affected the property's marketability is a question of fact to be resolved by the trier of fact.  Additionally, the plaintiff's level of sophistication and the degree to which it relied upon the commitment are questions of fact for the trier of fact to determine.  Further, we are not stating as a matter of law that in all instances a land title insurance company will be responsible under the theory of negligent misrepresentation.  The scope of a title insurance company's duty to disclose may be limited based upon the agreement of the parties when the commitment for title insurance is purchased.

Accordingly, we conclude that, in dismissing count III of the complaint, the trial court erred in finding that it failed to state a cause of action.  Additionally, we note that plaintiff's prayer for relief on count III seeks a judgment "in an amount in excess of $50,000."  We find no basis for such an amount.  Accordingly, should plaintiff prevail on count III, we conclude that it should be awarded a sum no greater than the $30,000 purchase price of the subject property.

Further, plaintiff argues that the trial court erred in dismissing count IV, which alleged a violation of section 2 of the Act.  Plaintiff maintains that count IV clearly stated a cause of action under the Act.  In response, defendant contends that it was under no duty to report the amendment to plaintiff and that the alleged misrepresentation was an omission of law rather than an omission of material fact, as required by the Act.

In complaints made pursuant to section 2 of the Act, the plaintiff must allege specific facts supporting each element of the claim.  
Mackinac v. Arcadia National Life Insurance Co.
, 271 Ill. App. 3d 138, 141 (1995).  Section 2 prohibits:

"Unfair methods of competition and unfair or deceptive acts or practices, including *** the use or employment of any deception, fraud, *** misrepresentation or the concealment, suppression or omission of any material fact, with
 
intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce ***[,] whether any person has in fact been misled, deceived or damaged thereby."  815 ILCS 505/2 (West 1996).

In order to establish a claim under section 2, plaintiff must allege and prove (1) the misrepresentation or concealment of a material fact; (2) an intent by the defendant that plaintiff rely on that misrepresentation or concealment; and (3) that the deception occurred in the course of conduct involving trade or commerce. 
Mackinac
, 271 Ill. App. 3d at 141.  Further, a plaintiff alleging a violation of the Act does not have to show actual reliance on the deceptive act or that defendant committed the deceptive act in bad faith.  
Randels v. Best Real Estate, Inc.
, 243 Ill. App. 3d 801, 805 (1993).  Nevertheless, plaintiff must show that the deceptive act related to a material fact.  
Randels
, 243 Ill. App. 3d at 805. Generally, a deceptive representation or omission of law does not constitute a violation of the Act because both parties are presumed to be equally capable of knowing and interpreting the law.  
Randels
, 243 Ill. App. 3d at 805.

In 
Randels
, the plaintiffs purchased residential real estate, unaware of a village ordinance that required the disconnection of the property’s septic system and the hookup with the municipal sewer system at the property owners’ expense.  After the purchase, plaintiffs subsequently filed a complaint against the seller, the listing brokerage, and the broker, alleging violations of the Act for the failure to disclose the ordinance.  Citing 
O’Brien v. Noble
, 106 Ill. App. 3d 126 (1982), and 
City of Aurora v. Green
, 126 Ill. App. 3d 684 (1984), the 
Randels
 court found no violation of the Act.  Specifically, the court stated:

"The village ordinance requiring the sewer hookup was a matter of public knowledge, and the ordinance plainly sets out the circumstances under which property owners were required to hook up to public sewers at their expense.  Plaintiffs knew the property had a septic system, and a simple review of the applicable village ordinances would have put the plaintiffs on notice that the hookup was required.  The computer listing, which the plaintiffs obtained on their own, indicated that city sewers were available and that a related assessment was possible.  However, plaintiffs did not inquire about the septic system, sewer availability, or possible assessments.  In fact, plaintiffs made few, if any, inquiries about the property they bought.  One of the plaintiffs, a licensed real estate agent who received a commission for the sale of the property, essentially showed the property to herself and the other plaintiff.  Under these circumstances, we conclude that defendants’ failure to disclose the ordinance was an omission of law readily discoverable by plaintiffs and therefore did not violate the Consumer Fraud Act because the omission was not of a material fact.  Accordingly, the trial court was correct in its judgment that none of the defendants violated the Consumer Fraud Act."  
Randels
, 243 Ill. App. 3d at 807.

Similar to 
Randels
, the present case involves a matter of public record, which plainly described the property to which it applied.  As a builder, plaintiff is presumed to be familiar with zoning ordinances, and a simple review of the subject zoning ordinances would have put plaintiff on notice of the amendment. Despite its presumed familiarity with such procedures, plaintiff did not make this rudimentary inquiry.  Based upon these facts, we find, like the 
Randel
 court, that defendant’s failure to disclose the ordinance was an omission of law readily discoverable by plaintiff and, accordingly, was not a violation of the Act, as it was not an omission of material fact.  The trial court did not err in dismissing count IV of the complaint.

Finally, plaintiff argues that it should have been allowed to replead counts II through IV.  As defendant points out, at the hearing on the motion to dismiss, the trial court gave plaintiff an opportunity to replead counts II through IV.  Plaintiff failed to do so.  As a result, we see no merit in this argument.

For the reasons stated above we affirm the trial court's dismissal of counts I, II, and IV of the complaint.  Further, we reverse the dismissal of count III and remand this cause of action for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

McLAREN, J., concurs.

JUSTICE INGLIS, dissenting:

While I agree with the majority’s holding that plaintiff states a claim against defendant for negligent misrepresentation, I believe that the recorded zoning amendment subjects defendant to contractual liability under the title insurance policy and that plaintiff alleges facts supporting a violation of the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 
et
 
seq
. (West 1996)).

The majority first concludes that the recorded zoning amendment does not render title unmarketable.  The majority does not view the recorded amendment as a flaw that on its face would decrease the property’s market value.  It sees a difference between marketability of title and marketability of land.  I disagree.  In this case, plaintiff alleged that nothing could be built on the property due to the zoning amendment.  Because no dwelling unit can be built on the subject property, the market value of the land is greatly reduced.  Thus, because the market value of the property is greatly reduced, title is adversely affected.  Therefore, I agree with plaintiff that the recorded amendment was a defect in title adversely affecting its marketability.

Nor do I believe that, merely because the amendment is a zoning ordinance, it is excluded from coverage under the policy. The majority concludes that nothing supports the view that recording the amendment is an act of enforcement.  I believe that the majority ignores the plain language of the exception, which  states that zoning laws are excluded from coverage "except to the extent that a notice of the enforcement thereof 
or
 a notice of the defect *** has been recorded."  (Emphasis added.)  "Enforcement" is defined in Black’s Law Dictionary as an "act of putting something such as a law into effect."  Black's Law Dictionary 528 (6th ed. 1990).  This is, in fact, what occurred in the present case.  Recording the zoning amendment constituted a notice of the city’s mandate regarding the subject property. Alternatively, recording the amendment constituted notice of the defect.  In either case, I would find that zoning matters specifically filed of record against the subject property constituted an exception to the exclusion provision of the title insurance policy.

Further, I believe that, once the matter was recorded, defendant had a duty to accurately report all defects of record that adversely affect title.  The prospective purchaser relies on the title insurer’s search to research the applicable law and the records before issuing the commitment and to provide warnings about areas in which the purchaser might find title surprises.  
Oak Park Trust & Savings Bank v. InterCounty Title Co.
, 287 Ill. App. 3d 647 (1997).  The recorded amendment was not a law of general application, but a specific amendment affecting the subject property.  The disclosure of title surprises such as the recorded amendment, which restricts the purchaser from building any dwelling unit on a parcel of real estate, is the sort of problem that a title insurance purchaser seeks to discover and insure against.  Defendant had a duty to inform plaintiff of the recorded amendment and breached this duty by negligently failing to transcribe the recorded amendment onto the commitment.

Finally, the majority finds that, because the amendment was a matter of public record, plaintiff would have been put on notice of the amendment and, therefore, defendant’s failure to disclose the amendment was an omission of law not covered by the Act.  However, the majority fails to consider that part of plaintiff’s investigation consists of plaintiff’s reliance on defendant to research and disclose 
recorded
 matters specifically identifying and affecting the subject property.  During oral argument defendant acknowledged that it knew of the recorded amendment, yet chose to ignore it.  Under these circumstances, I would find that such conduct and reliance state a claim under the Act.  Accordingly, I respectfully dissent.